UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONNIE SIMS, # 296294,

                 Petitioner,

                                       Case No. 12-CV-12421

v.

                                       HON. MARK A. GOLDSMITH

CARMEN PALMER,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

## I. INTRODUCTION

This is a habeas case.  Before the Court is Petitioner Lonnie Sims's pro se request for habeas relief pursuant to 28 U.S.C. § 2254.  Petitioner, currently incarcerated at the Michigan Reformatory in Ionia, Michigan, pled no contest to two counts of armed robbery, in violation of Mich. Comp. Laws § 750.529, and one count of unarmed robbery, in violation of Mich. Comp. Laws § 750.530, in Oakland County Circuit Court.  On March 8, 2010, he was sentenced to three concurrent terms of 212-to-900 months in prison.  The petition raises six claims: (i) trial counsel was ineffective for failing to raise an insanity defense, misadvising Petitioner about what his sentencing guidelines would be, and failing to inform Petitioner that he faced an enhanced sentence as a habitual offender; (ii) Petitioner's plea was illusory; (iii) Petitioner's plea was not voluntary; (iv) the trial court did not consider mitigating evidence in imposing the sentence; (v) the trial court erred in imposing fines and costs against Petitioner; and (vi) the prosecutor committed misconduct.  The Court will deny the petition because Petitioner's claims do not

merit habeas relief.  The Court will also deny Petitioner a certificate of appealability and deny permission to proceed in forma pauperis on appeal.

## II. BACKGROUND

Petitioner's convictions result from the robberies of three Family Dollar Stores in Pontiac, Michigan.  Two preliminary examinations were held regarding the first two robberies. At the first hearing, Malissa Payne, an employee of one store, testified that on July 12, 2008, Petitioner came into the store and waited until there was no one in her cash register lane.  8/6/09 Tr. at 5 (Dkt. 10-4).  Petitioner then grabbed Payne around the neck and held a knife to her throat.  Petitioner said "give me the money."  Id. at 8.  Payne opened up the cash drawer for Petitioner.  Id. at 9.  Petitioner let Payne go, grabbed the cash out of the drawer, and ran out of the store.  Id.  Payne suffered minor injuries from where Petitioner's knife cut her neck while he held it to her throat.  Id. at 10.

At the second hearing, Sheena Acuna-Gutierrez testified that on July 16, 2008, Petitioner walked into her Family Dollar Store in Pontiac and asked for assistance locating an item. 8/11/09 Tr. at 5 (Dkt. 10-5).  Gutierrez told Petitioner that the store did not have what he was looking for, so Petitioner left.  Id.  Petitioner returned ten minutes later, walked back through the store, and then approached Gutierrez at the register.  Petitioner handed Gutierrez a note, which said "Don't scream.  Don't yell.  I have a gun.  Give me all your money."  Id. at 7.  Gutierrez did as Petitioner demanded.  Petitioner stated that he had a gun and he kept one of his arms under his shirt.  After Petitioner took the bag of money from Gutierrez, he pointed at her and said "bitch, I know where you live." Id.  Then he left the store.  Id.

Finally, Petitioner was charged with the robbery of a third store occurring on July 22, 2008.  Pet'r Br. at 2 (Dkt. 10-9).  The prosecutor alleged that Petitioner approached employee

Dennis Malbouef at the store and asked for a price check.  Id. at 3.  As the attendant did the check, Petitioner walked around the counter, stuck a sharp object in the attendant's back, and demanded all of the money from the cash register.  Id.  The attendant complied and Petitioner took the money and ran out of the store.  Id.  Petitioner waived his right to a preliminary examination in this case.  The three cases were then consolidated for trial.  Id.

On January 27, 2010, the parties reached a plea bargain.  Petitioner agreed to plead guilty as charged to two of the armed robberies, and guilty to a reduced charge of unarmed robbery in the third case.  1/27/10 Tr. at 4.  In exchange, the prosecutor agreed to dismiss two other unrelated cases involving charges of robbery from 2008, and to the reduced charge.  Id.  There was no sentencing agreement.

Defense counsel stated that he explained to Petitioner that the trial judge usually determined a defendant's sentence by starting at the middle of the recommended guideline range, and he told him that in his case the range was from 126 or 135 to 400 months.  Id.  Defense counsel stated that he informed Petitioner that he would ask for the court to deviate from the low end of the guidelines.  Petitioner acknowledged that this was the information he received from his attorney.  Id.

Petitioner was then placed under oath.  Id. at 5.  He acknowledged that he was pleading guilty to two counts of armed robbery and one count of unarmed robbery.  Id.  He denied that any promises were made to him about sentencing.  Id. at 5-6.  The trial court then explained: "I don't hide anything, start everybody in the middle of the guidelines and then things that are not considered by the guidelines that are good bring you down and that are bad bring you up. That's just my approach, subject to modification depending on the circumstances."  Id. at 6.

The court informed Petitioner that he understood that his attorney would ask for a sentence below the guidelines, but that he was not promising anything. Id. Petitioner acknowledged that there was a habitual offender charge as well, and he admitted that he had prior convictions. Id. at 7. The court then informed Petitioner that he faced a maximum sentence of life imprisonment. Id.

The court advised Petitioner of all the trial rights he would be waiving by entering his guilty plea, and Petitioner indicated his understanding. Id. at 7-8. Petitioner denied that anyone threatened him or promised him anything to obtain his plea. Petitioner indicated that it was his own choice to plead guilty. Id. at 8-9. The prosecutor then examined Petitioner to elicit a factual basis for the plea. Id. at 9-10. The court then accepted the plea. Id. at 11.

At the sentencing hearing, the guideline range for the minimum sentence was calculated to be 135-to-451 months, as approximated by defense counsel. 3/8/10 Tr. at 5 (Dkt. 10-7). The court indicated that the middle of the guidelines called for a minimum sentence of 292.5 months. Id. at 10. The court noted that Petitioner pled guilty "for the right reasons," and as a result it "gave that a plug so to speak, a favorable plug." Id. As a result, the court went below the middle of the guidelines, and imposed a sentence of 212-to-900 months in prison. Id.

Petitioner was thereafter appointed appellate counsel who filed a motion to withdraw the plea. 10/13/10 Tr. (Dkt. 10-8). The trial court heard argument on the motion, but denied it on the record. Id. at 16-17. The court found that Petitioner voluntarily pled guilty and this his counsel was not ineffective. Id.

Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

> I. Defendant's due process rights were violated because his guilty plea was not understood, voluntary, or accurate.

II. Trial counsel was ineffective for failing to investigate, explore, advise, and consult with Defendant regarding his case.

III. Despite the recent holding of the Michigan Supreme Court, it was error for the trial court to order him to remit and reimburse fines, costs and assessments as a matter of law as it violates due process, equal protection, and other rights under the U.S. and Michigan constitutions.

IV. The trial court violated due process when it failed to consider all mitigating evidence at sentencing.

V. Despite the recent holding of the Michigan Supreme Court, it was error for the trial court to refuse to grant jail credit because he was on parole at the time of the offense.

The Michigan Court of Appeals affirmed Petitioner's conviction in a summary order, "for lack of merit in the grounds presented." People v. Sims, No. 301251 (Mich. Ct. App. Jan. 10, 2011) (Dkt. 10-9).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Sims, 798 N.W.2d 778 (Mich. 2011).

### III.  STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241, et seq. Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 410-411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks omitted).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.  "[I]f this standard is difficult to meet, that is because it was meant to be."  Id.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar re-litigation of claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-787.

## IV.  ANALYSIS

### A. Ineffective Assistance of Counsel and Validity of Guilty Plea

Petitioner's first habeas claim presents three allegations of ineffective assistance of trial counsel.  Petitioner alleges that his trial counsel (i) failed to raise an insanity defense, (ii) misadvised Petitioner regarding the sentencing guideline range, and (iii) never advised Petitioner about the habitual felony offender sentence enhancement.  Petitioner's related third claim asserts that his plea was unknowing and involuntary for the same reasons.  These claims are without merit.

To show a denial of the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland v.

7

Washington, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  Id.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  Id. at 689.  Second, the defendant must show that such performance prejudiced his defense.  Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Strickland's test for prejudice is a demanding one.  The likelihood of a different result must be substantial, not just conceivable."  Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quotation marks omitted).

Also pertinent to Petitioner's claim is whether his guilty plea was valid.  It has been long-established that a "plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242 (1969).  A plea of guilty or no contest is invalid unless it is entered by a defendant intelligently and voluntarily.  Bousley v. United States, 523 U.S. 614, 618 (1998).  In order to withstand a post-conviction challenge to the voluntariness of the plea, the record must be clear as to the voluntariness. Boykin, 395 U.S. at 242.

In a federal habeas proceeding in which a petitioner challenges the validity of a guilty plea, it is the duty of the respondent to demonstrate that the guilty plea was entered knowingly, intelligently and voluntarily, which is typically accomplished by submission of a presumptively correct plea proceeding transcript.  Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993).  A ruling by a state court upholding the validity of the guilty plea is presumed correct, unless there is a showing that the plea proceeding transcript is somehow inadequate to demonstrate that the

8

plea was entered knowingly, intelligently and voluntarily under the totality of the circumstances. Id. at 326-327.

Here, Petitioner's claim that his counsel was ineffective for failing to pursue an insanity defense was waived when he pled guilty. An unconditional guilty plea usually constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Martin, 526 F. 3d 926, 932 (6th Cir. 2008) ("Generally, a voluntary and unconditional guilty plea "bars any subsequent non-jurisdictional attack on the conviction."). Pre-plea claims of ineffective assistance of trial counsel are considered non-jurisdictional defects that are waived by a guilty plea. United States v. Stiger, 20 F. App'x 307, 309 (6th Cir. 2001). Therefore, a claim that counsel was ineffective for failing to raise an insanity defense is waived by a voluntary guilty plea. See id. ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Stamper v. Sherry, No. 05-CV-72833-DT, 2007 WL 1218720, at*6 (E.D. Mich. Apr. 23, 2007) (holding that claim that defense counsel was ineffective for failing to investigate an insanity defense was foreclosed by his plea).

Furthermore, Petitioner has not established that, but for defense counsel's alleged errors, there is a reasonable probability that he would not have pleaded guilty and insisted on going to trial to mount an insanity defense. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (stating that in order to demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). By entering a plea, Petitioner received a substantial benefit. Two unrelated robbery cases were dismissed, convictions for which might have resulted in consecutive sentences.

Moreover, Petitioner has not offered substantial evidence of insanity showing that such a defense had any real prospect of success. Under such circumstances, Petitioner cannot show a reasonable probability that he would have forgone the plea agreement and gone to trial instead.

Review of petitioner's other two claims of ineffective assistance of counsel are foreclosed by the plea colloquy. During the plea hearing, Petitioner denied that he was promised anything other than what was placed on the record. In fact, he agreed that his attorney advised him of the general guideline range that was used at sentencing, and he was advised by the trial court that he was a habitual offender and faced up to life imprisonment. The court informed Petitioner that no promises were being made as what his sentence would be. Mere claims of a petitioner that a plea agreement was different than what appeared on the record cannot, standing alone, overcome the presumption that the guilty plea was valid. To do so otherwise would render "the plea colloquy process meaningless." Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir. 1999). Otherwise, "any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea." Id.

Petitioner was not denied the effective assistance of counsel due to his counsel's alleged erroneous prediction as to the sentence Petitioner would receive under the plea agreement. Id. The plea agreement contained no promise of a particular sentence and Petitioner stated at the plea hearing that he understood the terms of the plea agreement and the consequences of his plea. See, e.g., Bridinger v. Berghuis, 429 F. Supp. 2d 903, 910-11 (E.D. Mich. 2006) (holding that the petitioner could not show that counsel's actions rendered his guilty plea unintelligent or involuntary); Sellers v. United States, 316 F. Supp. 2d 516, 521 (E.D. Mich. 2004) (same).

Petitioner's third claim of an involuntary plea is without merit for the same reasons. The trial court conducted a proper plea colloquy that disabused Petitioner of any belief that he would

receive a specific sentence in exchange for his plea. The trial court informed him of the maximum sentence he faced, the sentencing guideline range was accurately stated, and Petitioner denied that he relied on any other promises in making his decision to plead guilty.

Accordingly, Petitioner's first and third habeas claims do not state a basis for granting habeas relief.

**B. Illusory Plea**

Petitioner's second claim for relief asserts that his plea bargain was illusory because there was insufficient evidence to convict him of armed robbery in the case that was reduced to unarmed robbery.

A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. United States v. Randolph, 230 F.3d 243, 250-251 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. See, e.g., Spearman v. United States, 860 F. Supp. 1234, 1250 (E.D. Mich. 1994).

As noted above, the prosecutor agreed to dismiss two unrelated robbery cases in addition to reducing the charge in one case from armed robbery to unarmed robbery. The Court concludes that the plea agreement was not illusory because, even ignoring the reduced charge, Petitioner was promised the dismissal of other charges, which, therefore, amounted to a real, tangible benefit in consideration for the plea. See McAdoo v. Elo, 365 F. 3d 487, 498 (6th Cir. 2004) (holding that the petitioner derived a benefit by a guilty plea to first-degree murder with a life sentence with the possibility of parole in exchange for avoiding a trial and being sentenced to life without parole). Petitioner's second claim, therefore, lacks merit.

11

### C. Failure to Consider Mitigating Evidence at Sentencing

Petitioner's fourth claim alleges that the trial court failed to afford him individualized consideration of mitigating evidence on his behalf. Habeas relief cannot be granted on these grounds because the Supreme Court has limited the role of mitigating evidence to capital cases. Harmelin v. Michigan, 501 U.S. 957, 994-996 (1991) (rejecting the use of mitigating evidence for a non-capital sentence and stating that "[w]e have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further."); Engle v. United States, 26 Fed. Appx. 394, 397 (6th Cir. 2001) (holding that individualized sentencing is not mandated by the Eighth Amendment in non-capital cases). Because Petitioner had no constitutional right to an individualized sentence, no constitutional error occurred because of the state trial court's failure to consider mitigating evidence on his behalf at sentencing. Hastings v. Yukins, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002) (rejecting habeas claim that the sentence was disproportionate because the trial court failed to consider the petitioner's mental illness at the time of the crime as mitigating evidence).

### D. Imposition of Fines and Costs

Petitioner's fifth claim asserts that the trial court erred in imposing fines and costs as part of his sentence. The claim is not cognizable on habeas review because, under section 2254, subject-matter jurisdiction exists "only for claims that a person is in custody in violation of the Constitution or laws or treaties of the United States." Washington v. McQuiggin, 529 F. App'x 766, 772-773 (6th Cir. 2013); see also United States v. Watroba, 56 F.3d 28, 29 (6th Cir. 1995) (monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement of 28 U.S.C. § 2255).

### E. Prosecutorial Misconduct

Petitioner's sixth claim asserts that the prosecutor committed misconduct by stating that Petitioner had been in the court system his whole life and that he had a GED.  Pet. at cm/ecf Pg ID 12 (Dkt. 1).  Petitioner asserts that these misrepresentations persuaded the trial court to deny Petitioner's motion to withdraw his plea.  Id.  Respondent correctly notes that this claim was not exhausted in the state courts.  Resp. Br. at 46 (Dkt. 9).

While normally a habeas petitioner is required to exhaust his claims in state court before presenting them on federal habeas review, a habeas court may nevertheless deny the claims on the merits despite the petitioner's failure to exhaust his state court remedies.  See Cain v. Redman, 947 F. 2d 817, 820 (6th Cir. 1991) (explaining that the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdiction limitation of the power of the court).  That is the situation here.  Whether Petitioner was required to exhaust his prosecutorial misconduct claim has no bearing on the disposition of the petition because his claim lacks merit.

It is well-established that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  Berger v. United States, 295 U.S. 78, 88 (1935).  A prosecutor inappropriately attacks a defendant by making personal or inflammatory remarks.  United States v. Young, 470 U.S. 1, 8 (1985).  To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

At the hearing on Petitioner's motion to withdraw his plea, the prosecutor stated that Petitioner had earned his GED while in prison, and she referred to the fact that Petitioner was a fourth time habitual felony offender.  10/13/10 Tr. at 13 (Dkt. 10-8).  These statements were

13

made in the context of her argument that Petitioner knew what he was doing when he pled guilty. Id.  The prosecutor also referred to Petitioner as being "involved in the court system his entire life."  Id.  Petitioner claims that he never earned his GED and that he has not been involved in the court system his entire life because he does not have a juvenile record.  Pet. at cm/ecf Pg ID 12.

Assuming that the prosecutor's comments were false, they were harmless and did not impact the result of the proceeding.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (holding that a constitutional error implicating trial procedures is considered harmless on habeas review if it did not have a "substantial and injurious effect or influence" in determining the result of the proceeding).  Despite the comments by the prosecutor, the trial court properly denied Petitioner's motion to withdraw his plea.  Referring to the plea proceeding, the trial court denied the motion because "the record speaks for itself."  10/13/10 Tr. at 16.  Indeed, as explained above, the trial court's proper plea colloquy belies Petitioner's claim that his plea was involuntary because he misunderstood the sentencing consequences.  Accordingly, Petitioner is not entitled to relief on this claim.

### F.  Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  A petitioner satisfies this standard by demonstrating that "jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further."

Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may

not conduct a full merits review, but must limit its examination to a threshold inquiry into the

underlying merit of Petitioner's claims. Id. at 336-37. "The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant." Rules

Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional

right. Accordingly, a certificate of appealability is not warranted in this case. The Court further

concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as

any appeal would be frivolous. See Fed. R. App. P. 24(a).

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for a writ of habeas corpus.

The Court also denies the issuance of a certificate of appealability and denies Petitioner to appeal

in forma pauperis.

SO ORDERED.

Dated:  May 5, 2014                          s/Mark A. Goldsmith
        Flint, Michigan                      MARK A. GOLDSMITH
                                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on May 5, 2014.

                                             s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager